IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL HURLOW<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR NORTH AMERICA, INC., INC, NATHAN LINDSTROM, BRAD ANDERSON, and SPENCER ILLINGWORTH, in their individual capacities.<br><br>Defendants. | Case No.<br><br><br><br>Plaintiff Demands Trial By Jury |

## COMPLAINT

Plaintiff DARRYL HURLOW, by and through his undersigned attorneys, complains against Defendants TOYOTA MOTOR NORTH AMERICA, INC, NATHAN LINDSTROM, BRAD ANDERSON, and SPENCER ILLINGWORTH, in their individual capacities, and states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress violations of and interference with Plaintiff's exercise of rights under the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601, *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617, 42 U.S.C. § 1983, and 28 U.S.C. § 1343.

3. Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## PARTIES

4. Plaintiff DARRYL HURLOW ("Plaintiff" or "Hurlow") is a citizen of the United States who resides in St. Joseph, Michigan and whose principal place of business is in Naperville, Illinois.

5. Plaintiff has been employed by the Toyota Motor Norther America, Inc. for six years and is currently employed as a District Sales Manager ("DSM") for District 5.

6. At all relevant times, Plaintiff was an "employee," as defined in the FMLA, 29 U.S.C. § 2611(2)(A).

7. At all relevant times, Plaintiff was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that she was employed for at least twelve months and worked at least 1,250 hours for Toyota Motor North America, Inc. during the twelve-month period preceding her leave requests.

8. Defendant TOYOTA MOTOR NORTH AMERICA, INC. ("Toyota") is a municipal corporation conducting business in the State of Illinois, with their principal place of business in Naperville, Illinois.

9. Defendant NATHAN LINDSTROM, at all relevant times, was the Staff Manager for Toyota. He is sued in his individual capacity.

10. Defendant BRAD ANDERSON, at all relevant times, was, and currently is, the Operations Manager for Toyota. He is sued in his individual capacity.

11. Defendant SPENCER ILLINGWORTH, at all relevant times, was, and currently is, the Assistant General Manager for Toyota. He is sued in his individual capacity.

12. At all relevant times, Defendants were "employers" of Plaintiff within the meaning of 29 U.S.C. § 2611(4) in that Defendant Toyota is a "person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," and the individual Defendants are "person[s] who act[ed], directly or indirectly, in the interest of an employer to any of the employees of such employer."

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

13. On or about September 2015, Plaintiff began working for Defendant Toyota as an intern.

14. On or about December 2015, Plaintiff was promoted to the position of Management Trainee.

15. On or about May 2016, Plaintiff was promoted to the position of District Service and Parts Manager ("DSPM").

16. Plaintiff has an excellent employment record.

17. Prior to requesting leave under the Family and Medical Leave Act, Plaintiff was consistently ranked as one of the top DSPMs during quarterly rankings.

18. On or about July 12, 2019, Plaintiff notified Defendants of his intent to take a leave of absence under FMAL due to the anticipated birth of daughter being August 13, 2019.

19. Plaintiff requested the full 12 weeks allowed under the FMLA statute.

20. In response, on or about July 15, 2019, Defendant Lindstrom contacted Plaintiff via email, sending a meeting invite, requiring Plaintiff to meet with Defendants Lindstrom, Anderson, and Illingworth to discuss Plaintiff's intention and plan for his leave of absence under FMLA.

21. Defendants did not approve Plaintiff's request, but first required that Plaintiff attend the meeting in order to answer questions and give further details about his requested leave.

22. On or about July 29, 2019, Plaintiff met with the individual Defendants regarding his request for an FMLA leave of absence.

23. In the meeting, Plaintiff was advised that because he had requested and would be on an FMLA leave of absence, he would no longer be considered for any promotions even if he applied for them while on leave.

24. After the meeting, Plaintiff was left anxious, distressed, and discouraged from his decision to take a FMLA leave.

25. Ultimately, Defendants approved Plaintiff's request on or about August 12, 2019, the date his daughter was born.

26. However, Defendants unilaterally changed the date of Plaintiff's return to October 28, 2019, thus only approving his leave to be 11 weeks instead of the requested-for 12 weeks.

27. Upon further inquiry by Plaintiff, Defendants amended the return date to November 4, 2019, which fulfilled the initial leave amount requested by Plaintiff.

28. On August 12, 2019, Plaintiff's daughter was born.

29. On November 4, 2019, Plaintiff returned to work.

30. Upon returning to work, Defendants retaliated against Plaintiff, treating him unjustly and prejudicially because he requested and took FMLA leave for the birth of his daughter.

31. Prior to taking his leave, in the year 2018, Plaintiff won the Fixed Ops Finest Contest, an objective-based award issued to the DSPM with the highest performing district. The winner of the contest receives time off from work for an all-inclusive luxury vacation with their guest as well as additional gifts.

32. That same year, the second-place DSPM was selected by Toyota to attend the all-inclusive luxury trip by reasoning that the score was "very close" to Plaintiff. During that year, Plaintiff's score was 107 points apart from the second-place DSPM.

33. In contrast, in the year 2019, when Plaintiff took his FMLA leave, Plaintiff was 100 points apart from the Fixed Ops Finest winning DSPM but was not selected to attend the all-inclusive luxury trip.

34. Furthermore, in or about October 2019, Plaintiff was denied consideration for a promotion to DSM due to being on FMLA leave.

35. The DSPM promoted to DSM in October 2019 was consistently ranked below Plaintiff in the past.

36. Additionally, Plaintiff had more work experience, knowledge, and seniority over the DSPM promoted to DSM.

37. Also, on or about October 2019, Plaintiff was denied assignment to District 1. Plaintiff had requested to be assigned to District 1 on multiple occasions over the past several years. Generally, the most senior DSPM with the highest performance and sales number was given their preferred District. Plaintiff was the most senior DSPM starting in 2017 and led the DSPMs in sales and almost every performance metric.

38. District 1 is known for its desirability with the Central Office Area.

39. Yet again, the DSPM selected for District 1 was consistently ranked below Plaintiff in the past.

40. Instead of being rotated into a new district, as had been the practice with every new hire or change in assignment in the past, Defendants left Plaintiff in District 4, a high travel district, despite Defendants' knowledge that Plaintiff had a newborn baby at home.

41. Suddenly, after Plaintiff returned from his FMLA leave, and despite consistently being in the top two positions in the quarterly rankings prior to taking leave, Defendants began placing Plaintiff in the bottom of the DSPM rankings.

42. The DSPM rankings are a vague, subjective-based system for which the exact parameters and basis have never been revealed to any of the employees subject to the ranking system.

43. The DSPM rankings directly affect awards, bonuses, promotions, and assignments.

44. Plaintiff was placed last in the 3rd quarter ranking during 2019.

45. Plaintiff's 3rd quarter bonus was reduced in 2019.

46. Plaintiff's 3rd quarter accessory bonus was reduced in 2019.

47. Plaintiff's company-issued vehicle was given to a new female DSPM and replaced with an older, damaged vehicle.

48. On or about November 6-8, 2019, upon Plaintiff's return from FMLA leave, every DSPM attended the Service Performance Group Meeting in Orlando, Florida while Plaintiff was not allowed to attend.

49. In fact, Defendant Toyota knowingly canceled his reservations.

50. In November 2019, when a DSM position became vacant, Defendant Toyota made a concerted effort to find and hire a candidate outside out the company to fill the position.

51. Since Plaintiff began his position with Toyota, he has never witnessed nor heard of a DSM being hired from outside the Central Office, much less outside the entire company.

52. During the 2019 company holiday group photo, all employees were given matching company attire (*i.e.* jacket) and take a group photo.

53. Plaintiff was not given the 2019 holiday company attire for that year.

54. Moreover, in the past, when an employee was absent from the holiday photo, that employee would be photo-shopped into the company greeting card.

55. In 2019, Plaintiff was not included in the photo and was also not photo-shopped in after the fact.

56. Plaintiff was ranked 4 out of 5 in the 2019 4th Quarter DSPM ranking.

57. Plaintiff's fourth quarter bonus was reduced.

58. The actions of Defendants after Plaintiff requested an FMLA leave, as perpetrated by its agents and as described and complained of above, are unlawful employment practices as they are in retaliation for Plaintiff's request for and taking of a leave of absence under the FMLA.

59. Plaintiff was eligible for FMLA leave each year in that he worked at least 1,250 hours for Toyota during the twelve-month period preceding his leave request.

60. Defendants interfered with Plaintiff's right to FMLA leave by restricting his promotional opportunities during his leave and unilaterally changing his return date.

61. Further, upon his return, Plaintiff was subjected to harassment, unfair and unjust treatment, and the loss of promotional opportunities in retaliation for him exercising his rights under the FMLA.

62. Defendant Toyota, through the individual Defendants, retaliated and interfered with Plaintiff's rights under the FMLA, by subjecting him to unwarranted scrutiny and removing promotional opportunities, diminishing bonuses, awards, and other employment opportunities, and singling Plaintiff out and treating him differently than other DSPMs.

63. The individual Defendants had supervisory authority over Plaintiff and were responsible in whole or part for the alleged FMLA violations while acting in Toyota's interest.

## COUNT I

**(FMLA Interference
v. All Defendants)**

64. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein.

65. Plaintiff was, and continues to be, an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that he was employed for at least twelve months and

worked at least 1,250 hours for Defendants during each twelve-month period preceding his leave request.

66. Plaintiff properly applied for FMLA leave in advance of his daughter's birth.

67. Defendants have interfered with, restrained, and restricted Plaintiff's exercise of his FMLA rights by unilaterally changing Plaintiff's return date and by denying Plaintiff opportunities for promotions.

68. Defendants ultimately approved Plaintiff's request for FMLA leave.

69. Defendants' conduct of interfering with Plaintiff's request for a leave absence is in violation of 29 U.S.C.A. § 2615(a)(1).

70. As a direct and proximate result of Defendants' actions, Plaintiff has suffered a loss of income, loss of other employee benefits, costs, fees, expenses, and damage to his reputation.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages, benefits, or other compensation lost by Plaintiff by reason of the Family Medical Leave Act violations, including but not limited to back pay, front pay, and pre-judgment interest;

B. Actual monetary losses sustained by Plaintiff as a direct result of Defendants' Family Medical Leave Act violations;

C. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A), at the prevailing rate from the date Plaintiff was retaliated against to the date of judgment, in an additional amount equal to the award of damages, including interest;

D. Equitable relief including restoration of job assignments and promotions;

E. A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

F. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Family Medical Leave Act;

G. A declaratory judgment that Defendants' actions violate the Family Medical Leave Act;

H. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

I. An award of reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 2617(a)(3); and

J. Any other relief tailored to the harm suffered.

## COUNT II
### (FMLA Retaliation
### v. All Defendants)

71. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein.

72. Plaintiff properly applied for FMLA leave in advance of his daughter's birth.

73. Defendants have interfered with, restrained, and restricted Plaintiff's exercise of his FMLA rights by unilaterally changing Plaintiff's return date and by denying Plaintiff opportunities for promotions.

74. Defendants ultimately approved Plaintiff's request for FMLA leave.

75. Defendants have retaliated against Plaintiff for his exercise of his FMLA rights by subjecting him to unwarranted scrutiny, singling him out, denying him promotional opportunities, and diminishing bonuses, awards, and other employment opportunities.

76. Defendants' actions constitute unlawful retaliation against Plaintiff for her attempts to exercise her rights under the FMLA, in violation of the FMLA, 29 U.S.C. § 2615(a).

77. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of income, loss of other employee benefits, costs, fees, expenses, and damage to her reputation.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages, benefits, or other compensation lost by Plaintiff by reason of the Family Medical Leave Act violations, including but not limited to back pay, front pay, and pre-judgment interest;

B. Actual monetary losses sustained by Plaintiff as a direct result of Defendants' Family Medical Leave Act violations;

C. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A), at the prevailing rate from the date Plaintiff was retaliated against to the date of judgment, in an additional amount equal to the award of damages, including interest;

D. Equitable relief including restoration of job assignments and promotions; ;

E. A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

F. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Family Medical Leave Act;

G. A declaratory judgment that Defendants' actions violate the Family Medical Leave Act;

H. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

I. An award of reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 2617(a)(3); and

J. Any other relief tailored to the harm suffered.

Respectfully submitted,

DARRYL HURLOW

*s/Jacob D. Exline*

One of Plaintiff's Attorneys

*Electronically filed on July 29, 2021*

Jacob D. Exline (#6326874)
Heidi Karr Sleper (#6287421)
KURTZ, SLEPER & EXLINE, LLC
610 W. Roosevelt Rd., Ste A2
Wheaton, IL 60187
Phone: 630-323-9444
E-mail: jexline@kselegal.com
E-mail: hsleper@kselegal.com